UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **ALBERICI CONSTRUCTORS, INC.,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**MATHEW WRIGLEY, and** )<br>**ANDERSON ELECTRIC, INC.** )<br>)<br>**Defendants.** ) | **Case No. 08-CV-2164** |

# OPINION

On April 27, 2009, Plaintiff Alberici Constructors, Inc. (Alberici) filed a First Amended Complaint at Law (#29) against Defendant's Mathew Wrigley and Anderson Electric, Inc. (Anderson). On June 17, 2009, Anderson filed a Motion to Re-Submit a Prior Motion for Summary Judgment (#31). Anderson had previously filed a Motion for Summary Judgment (#20) on February 9, 2009. Alberici filed its Response to the Motion for Summary Judgment (#33) on July 6, 2009. On July 20, 2009, Anderson filed its Reply (#34) to Alberici's Response. This case is before the Court for ruling on Anderson's Motion for Summary Judgment (#20) as resubmitted by Anderson's Motion to Re-Submit a Prior Motion (#31). For the following reasons, Anderson's Motion for Summary Judgment (#31) is GRANTED.

FACTUAL BACKGROUND

The following facts are taken from the "Undisputed Facts" section of Anderson's Motion for Summary Judgment which Alberici has conceded to in their Response, and from exhibits

filed as attachments to the filings in this case.  Alberici entered into a contract with Ameren Energy Generating Company (Ameren) to provide services including on-site supervision, crafts, labor, and materials to perform boiler maintenance at Ameren's Coffeen Power Plant.  Anderson contracted with Ameren to provide electrical services at various Ameren power plants, including the Coffeen Power Plant.  Both the Alberici and Anderson contracts with Ameren were subject to the requirement that commercial general liability insurance coverage be purchased naming Ameren and its subsidiaries and their affiliates as additional insured's "on a primary and noncontributory basis."

The Alberici and Anderson contracts with Ameren also were subject to the same set of General Conditions of Contract that were provided by Ameren, which had been incorporated into each of the aforementioned contracts.  This General Conditions of Contract contained the following applicable provisions:

> The term "Work" means all labor, methods, material, goods, equipment, structures, services, transportation and all other facilities to be provided by or performed by Contractor stated or reasonably inferred from the Contract Documents.  The Work may constitute the whole or a part of the Project . . . Contractor shall defend, indemnify and save harmless Company, its parent, affiliates and subsidiaries, and all of their respective directors, officers and employees . . . from and against any and all claims, demands, losses, damages, attorney fees and expenses caused by or resulting from any act or omission of Contractor . . . arising out of or in connection with the Work to the fullest extent permitted by law . . . . No provision of the Contract is intended or shall be construed to be for the benefit of any third-party.

In addition, the Ameren "Coffeen Power Station Maintenance Contract" is incorporated by reference into both the Alberici and Anderson contracts.  This maintenance contract provides that each contractor shall defend and indemnify Ameren "from and against any and all claims, demands, losses, damages, attorney fees and expenses caused by or resulting from any act or omission of Contractor . . . ."

Anderson's insurance policy which provides additional insured coverage for Ameren has a separate endorsement attached thereto entitled "Additional Insured – Owners, Lessees or Contractors".  This endorsement contains the following provision:

> If a contract with the Named Insured requires that the insurance provided for the Additional Insured be primarily concurrent or primary non-contributory, then the coverage provided to the additional insured under this endorsement shall conform to that contract.  However, this insurance will conform to that contract only to the extent that the contract requires this insurance to be primary in comparison to the Additional Insured's own policy or policies; in no event shall a contract with the named Insured operate to require this insurance to contribute with other Additional Insured coverage available to the additional insured, and this insurance shall be excess over any such other insurance, whether on an excess, contingent, or primary basis.

Alberici's insurance carrier for this incident is Discover Property and Casualty.  This policy contains an endorsement entitled "Blanket Additional Insured."  This endorsement contains the following provision:  "Where required by such contract, agreement, bid specification or permit, this insurance is primary as respects any other coverage available to the additional insured and we will not seek contribution from such other."

In the underlying state court lawsuit, which is pending in Macon County, Illinois, Matthew Wrigley and his wife have alleged that the defendants' Ameren, Ceda, and Alberici breached their duties by (1) failing to provide Anderson employees, including Wrigley, with a reasonably safe place to work, by allowing them to be exposed to toxic chemicals; (2) failing to properly supervise or inspect the work being performed by Ceda; (3) failing to evacuate Anderson employees during boiler cleaning; (4) failing to restrict access during boiler cleaning when employees could be exposed to toxic chemicals; (5) failing to warn Anderson employees that Ceda was cleaning boilers; (6) failing to inform Anderson employees what Ceda was doing; (7) failing to warn Anderson employees of the risk associated with cleaning boilers; and (8)

failing to provide Anderson employees with proper safety equipment, which could have prevented exposure to toxic chemicals used in the boiler cleaning.

In April, 2006, Ameren sent letters to Alberici and Ceda requesting that they defend and indemnify Ameren in the underlying lawsuit pursuant to the terms of the purchase orders. In June 2006, Alberici accepted Ameren's tender for defense. In August 2006, Ameren sent a letter granting Alberici permission to tender its defense and indemnity to Anderson for its pro rata share of defense and immunity. In October 2006, Alberici sent a letter to Anderson requesting that Anderson participate in the defense of Ameren on a one-third shared basis with Alberici and Ceda.

Alberici's First Amended Complaint alleges three counts as follows: Count I seeks a declaratory judgment that Anderson is obligated to pay its pro rata share of Ameren's defense and indemnity. Count II seeks an equitable contribution from Anderson for one-third, the pro rata share, of Ameren's defense costs and indemnification. Count III seeks equitable subrogation against Anderson for one-third, the pro rata share, of Ameren's defense costs.

STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(b), "a party against whom relief is sought may move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court has one task and one task only: to decide, based

upon the evidence of record, whether there is any material dispute of fact that requires a trial. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin Cmty. High Sch. Dist. 303, 213 F.Supp.2d 917, 929 (C.D. Ill. 2002). Speculation, however, is not the source of a reasonable inference. See Burwell, 213 F.Supp.2d at 929, citing Chmiel v. JC Penney Life Ins. Co., 158 F.3d 966, 968 (7th Cir. 1998). Therefore, the nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). Specifically, to survive summary judgment, the nonmoving party "must make a sufficient showing of evidence for each essential element of its case on which it bears the burden at trial." Kampmier v. Emeritus Corp., 472 F.3d 930, 936 (7th Cir.2007), citing Celotex Corp., 477 U.S. at 322-23.

## ANALYSIS

Anderson advances four main arguments in its Motion for Summary Judgment. As to Count I, Anderson argues that this Court should stay this cause of action until the previously filed state court law suit is concluded because any decision by this court on Alberici's request for declaratory relief will "necessitate some determination of liability or negligence on the part of one or more of the parties to this case;" or alternatively dismiss this claim because Alberici has no standing to prosecute this case as a third-party beneficiary. As to Count II, Anderson advances the argument that Alberici is not entitled to equitable contribution because each party

in the instant lawsuit insures a different risk. As to Count III, Anderson advances the argument that Alberici is not entitled to equitable subrogation because its insurance carrier is deemed to provide primary insurance coverage whereas Anderson's insurance carrier provides excess coverage.

COUNT I

Anderson first contends that Alberici lacks standing to raise the claim in Count I because it cannot enforce the contract between Ameren and Anderson as a third-party to the contract. Standing jurisprudence "contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'" Winkler v. Gates, 481 F.3d. 977, 979 (7th Cir. 2007), citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-62 (1992), quoting Allen v. Wright, 468 U.S. 737, 751 (1984). A litigant seeking relief in federal court must satisfy both constitutional and prudential limitations in order to have standing to sue. United States v. Kerner, 895 F.2d 1159, 1161 (7th Cir. 1990). Article III standing includes three elements: injury in fact, a causal connection between the injury and the defendant's conduct, and likely redressability through a favorable decision. Lujan, 504 U.S. at 560-61. Prudential standing encompasses "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint falls within the zone of interests protected by the law invoked." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004), quoting Allen, 468 U.S. at 751.

A strong presumption applies in Illinois that the parties to a contract intend that the

provisions of that contract to apply only to them, and not to third-parties. Caswell v. Zoya Int'l, Inc., 654 N.E.2d 552, 554 (Ill. App. Ct. 1995). For a third-party to a contract to have standing to sue, the contract must have been undertaken for the third-party's benefit and the contract itself must affirmatively make this intent clear. Caswell, 654 N.E.2d at 554. If the benefit to the third-party is merely incidental, that party has no right of recovery under the contract. Caswell, 654 N.E.2d at 554. Anderson contends that this case does not present a third-party beneficiary situation.

Alberici has responded to Anderson's claim that they lack standing by claiming that "Ameren assigned its contractual right to defense costs and indemnity to Alberici." Pursuant to Illinois law, an assignment occurs "when there is a transfer of some identifiable interest from the assignor to the assignee." Northwest Diversified, Inc. v. Desai, 818 N.E.2d 753, 761 (Ill. App. Ct. 2004). "Assignments are governed by contract law, and an assignment is subject to the same requisites for validity as are other contracts, such as intent, mutuality of assent, capacity to contract, legal subject matter, and consideration." Northwest Diversified, Inc., 818 N.E.2d at 761. The determination of whether a valid assignment was made is "to be determined according to the intention of the parties, and that intention is a question of fact to be derived not only from the instruments executed by them, but from the surrounding circumstances." Northwest Diversified, Inc., 818 N.E.2d 761, quoting Rivan Die Mold Corp. v. Stewart-Warner Corp., 325 N.E.2d 357, 361 (Ill. App. Ct.1975). If a valid assignment has been made, "the assignee acquires all of the interest of the assignor in the property that is transferred." Northwest Diversified, Inc., 818 N.E.2d at 761, quoting Buck v. Illinois Nat'l Bank & Trust Co., 223 N.E.2d 167, 169 (Ill. App. Ct. 1967).

This Court agrees with the Defendant that the alleged assignment of Ameren's contractual rights with Anderson to Alberici was not in fact an assignment and therefore does not establish prudential standing. The letter which Plaintiff relies on to establish the assignment of Ameren's interest was from Ameren's attorney (Sorling) to Alberici's claim representative, Cannon Cochran Management Services, Inc. (CCMSI). The relevant language stated: "[Sorling] believe[s] that these are the last of the documents that [CCMSI] requested from Ameren with regard to the coverage for the Wrigley claim . . . I think it will simplify matters if I may send the statements to you and CCMSI can then recover whatever pro rata portion of the fees from CEDA and Anderson's carriers that you three may agree upon as appropriate." This Court agrees with Anderson that this language is insufficient to constitute Ameren's intent to assign its contractual right to Alberici. Additionally this assignment lacks consideration because Ameren was already being defended by Alberici, thus there was no consideration received by Ameren in exchange for the assignment of the contractual right with Anderson. Therefore, judgment is granted for Anderson on Count I of Alberici's complaint.

## COUNT II

Anderson next contends that Alberici is not entitled to equitable contribution because Anderson and Alberici insure different risks, and because Anderson's insurance carrier, Liberty Mutual, is an excess carrier whereas Alberici's insurance carrier is primary. "Contribution applies to multiple, concurrent insurance situations and is only available where the concurrent policies insure the same entities, the same interests, and the same risks." Home Ins. Co. v. Cincinnati Ins. Co., 821 N.E.2d 269, 276 (Ill. 2004), citing Royal Globe Ins. Co. v. Aetna Ins. Co., 403 N.E.2d 680, 682 (Ill. 1980). As a result, where two insurers cover separate and distinct

risks, there can be no contribution among them.  Home Ins. Co., 821 N.E.2d at 276.  The Illinois Supreme Court has concluded that separate policies covering two different subcontractors for liability arising out of "your work" insures different risks.  Home Ins. Co., 821 N.E.2d at 279.  In Home Insurance, the Court explained that "arising out of your work" agreements insure only the risks involving that particular insured party, and that the plaintiff's policy applied only to liability arising out of its work and defendant's policy applied only to liability arising out of its work.  Home Ins. Co., 821 N.E.2d at 279.  Furthermore, even though it was possible that both policies would one day be triggered because the insured's liability for an accident arose out of both subcontractor's work, the court stated that this constituted a different question than whether the policies set out to cover the same risk.  Home Ins. Co., 821 N.E.2d at 279-80.

In this case, Alberici and Anderson contracted to defend or indemnify Ameren for liability "arising out of your work".  Anderson agreed to defend and indemnify Ameren only for liability stemming from Anderson's work at the power station.  This Court concludes that Anderson therefore did not insure the same risk as Alberici, who insured risk resulting solely from Alberici's work.  As a result, Alberici cannot maintain a cause of action for equitable contribution, irrespective of whether Anderson's insurance coverage is primary or excess.  Therefore, judgment is granted for Anderson on Count II of Alberici's complaint.

## COUNT III

Anderson next contends that Alberici is not entitled to equitable subrogation because Anderson's insurance carrier, Liberty Mutual, is an excess carrier whereas Alberici's insurance carrier, Discover Property and Casualty, is primary.  The elements of an equitable subrogation claim are as follows: "(1) the defendant carrier must be primarily liable to the insured for a loss

under a policy of insurance; (2) the plaintiff carrier must be secondarily liable to the insured for the same loss under its policy; and (3) the plaintiff carrier must have discharged its liability to the insured and at the same time extinguished the liability of the defendant carrier." Home Ins. Co., 821 N.E.2d at 280.  The Illinois Supreme Court has stated that:

> We believe that Schal Bovis expresses the correct view. A subrogation action brought by an excess insurer against a primary insurer is completely distinct from a contribution action. The elements necessary to maintain a contribution action focus prospectively on the "risk" that the parties set out to cover. For a coinsurer to recover, it must have insured the identical risk. In contrast, a subrogation claim only requires that the secondary insurer insure the "same loss" as the primary insurer. This requirement looks retrospectively at the loss suffered.

Home Ins. Co., 821 N.E.2d at 280.  To prove that it is secondarily liable to the insured, the plaintiff carrier must establish that it insured the same loss as the defendant carrier. Home Ins. Co., 821 N.E.2d at 280.  In addition, equitable subrogation is a device "for placing the *entire* burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged." Home Ins Co., 821 N.E.2d at 276 (emphasis in original).  This requires a showing that Anderson owes coverage to Ameren because Ameren's liability in the underlying Wrigley case arose at least partly out of Anderson's "work."  See Home Ins. Co., 821 N.E.2d at 281.

This Court finds that Alberici has failed to establish that Anderson is primarily liable to Ameren in the underlying Wrigley claim.  Alberici has failed to include any allegations that the underlying claim brought by Wrigley, one of Anderson's employees, against Ameren arose out of Anderson's work.  As a result, Alberici has failed to prove the required element for an equitable subrogation claim that the Defendant, Anderson, is primarily liable to Ameren for a loss under a policy of insurance.  Therefore, regardless of whether or not Anderson's insurance

coverage is primary or excess, Alberici's equitable subrogation claim fails.

IT IS THEREFORE ORDERED THAT:

(1) The Motion for Summary Judgment (#20) filed by Defendant Anderson Electric, Inc. is GRANTED.

(2) Judgment is entered in favor of Defendant Anderson and against Plaintiff Alberici on Plaintiff's First Amended Complaint (#29).

(3) This case is terminated.

ENTERED this 4th day of August, 2009

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE